UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 20-640 JGB (SPx)** | Date | October 30, 2020 |
|---|---|---|---|
| Title | ***Raul Uriarte-Limon v. James E. Hundley et al.*** | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion for Default Judgment (Dkt. No. 21); and (2) VACATING the hearing set for November 2, 2020 (IN CHAMBERS)

Before the Court is Plaintiff's Motion for Default Judgment. ("Motion," Dkt. No. 21.) The Court finds the Motion appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of the Motion, the Court GRANTS the Motion. The November 2, 2020 hearing is VACATED.

## I. BACKGROUND

This action arises out of alleged ADA violations at Extreme Backyard Designs, located at 2330 S. Vineyard Ave., Ontario, CA ("Extreme Backyard Designs store"). (Motion, 2.) Plaintiff Raul Uriarte-Limon ("Plaintiff") filed a Complaint against Defendants James and Lois Hundley, in their individual and representative capacity as trustee of the Hundley Family Trust ("Hundley Defendants"), Extreme Backyard Designs, Inc. ("Defendant EBD"), and Does 1-10. ("Complaint," Dkt. No. 1.) The Complaint alleges two causes of action: (1) violation of the Americans with Disabilities Act and (2) violation of the Unruh Civil Rights Act. (Id. 5, 7.)

Plaintiff properly served all Defendants with the Complaint, summons, and other Court documents by personal service. (Dkt. Nos. 9, 10, 15.) No Defendant has filed a response or otherwise appeared in the case.

After all Defendants failed to file a responsive pleading, Plaintiff filed a request for entry of default against Hundley Defendants on May 5, 2020. (Dkt. Nos. 9, 10.) The Clerk of this

Court entered default against the Hundley Defendants on May 6, 2020. ("First Entry of Default," "Second Entry of Default," Dkt. Nos. 13, 14.) Plaintiff filed a request for entry of default against Defendant EBD on June 23, 2020. (Dkt. No. 17.) The Clerk of the Court entered default against Defendant EBD on June 24, 2020. ("Third Entry of Default," Dkt. No. 18.) On September 8, 2020, Plaintiff moved for default judgment, requesting $12,965 in damages, attorneys' fees, and costs, as well as a permanent injunction. (Motion.) In support of the Motion, Plaintiff filed the following exhibits:

- Declaration of Attorney Russell Handy ("Handy Decl.," Dkt. No. 21-4);
- Billing Records (Dkt. No. 21-5);
- Declaration of Plaintiff Raul Uriarte-Limon ("Uriarte-Limon Decl.," Dkt. No. 21-6);
- Declaration of Corey Taylor, Investigator (Dkt. No. 21-7);
- various photographs, purportedly of the Extreme Backyard Designs store (Dkt. No. 21-8);
- various residency records (Dkt. No. 21-10);
- Declaration of Richard M. Pearl in *Antoninetti v. Chipotle Mexican Grill*, No. 5-cv-1660 J (WMc) ("Pearl Declaration," Dkt. No. 21-10);
- 2018 Real Rate Report (Dkt. No. 21-11);
- Declaration of John D. Connor and accompanying exhibits (Dkt. No. 21-12); and
- Declaration of Attorney Faythe Gutierrez ("Gutierrez Decl.," Dkt. No. 21-13).

No opposition was filed.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b), a court may order default judgment following the entry of default by the Clerk of the Court. Local Rule 55-1 requires an application to the Court for default judgment be accompanied by a declaration that conforms to the requirements of Federal Rule of Civil Procedure 55(b) and set forth the following information:

> (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Servicemembers Relief Act does not apply; and (5) that notice of the application has been served on the defaulting party, if required.

L.R. 55–1.

Whether to enter default judgment is within the sound discretion of the district court. Aldabe v. Aldabe, 616 F.2d 1089, 1092–93 (9th Cir. 1980). In Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set forth the following factors for consideration in determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471–72 ("Eitel factors"). Upon entry of default, the well-pleaded factual allegations of a complaint are deemed true; however, allegations pertaining to the amount of damages must be proven. TeleVideo Systems Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). A plaintiff is required to provide evidence of his damages, and a court may rely only on the declarations submitted by the plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2). Further, the damages sought must not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### III. DISCUSSION

Plaintiff moved this Court to enter default judgment against all Defendants. Plaintiff seeks to recover $12,965. (Motion at 2.) In order for default judgment to be entered in his favor, Plaintiff must meet the procedural requirements described above and establish that, on balance, the Eitel factors weigh in his favor. The Court evaluates these factors below.

#### A. Procedural Requirements

Plaintiff has satisfied the procedural requirements for entry of default judgment by the Court. Pursuant to Federal Rule of Civil Procedure 55, Plaintiff did not petition for entry of default judgment until after default was entered against all Defendants by the Clerk. (First, Second, and Third Entry of Default.) Additionally, Plaintiff's Motion and accompanying Gutierrez Declaration set forth the information required by the Local Rules of this Court. (Gutierrez Decl., ¶ 2.)

#### B. Eitel Factors

##### 1. Possibility of Prejudice to Plaintiff

Plaintiff would suffer prejudice if the Court does not enter default judgement. Because no Defendant has appeared in this action, a default judgment is the only means by which Plaintiff may recover. Absent a default judgment by this Court, Defendants will have avoided liability simply by not responding to Plaintiff's action. Therefore, this factor weighs in favor of default judgment. Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (finding the plaintiff would suffer prejudice absent entry of a default judgment because of the defendant's unwillingness to cooperate and defend against the claim).

##### 2. Substantive Merits of Plaintiff's Claims

The second and third Eitel factors concern the merits of Plaintiff's substantive claims and the complaint's sufficiency. Eitel, 782 F.2d at 1471–72. "The Ninth Circuit has suggested that these two factors require that a plaintiff 'state a claim on which the [plaintiff] may recover.'" PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172 (C.D. Cal. 2002) (internal citation omitted).

### a. Title III of the ADA

Title III of the ADA prohibits discrimination by public accommodations. It provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007) (internal alteration original). In addition, "[t]o succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business [or property] presents an architectural barrier prohibited under the ADA and (2) the removal of the barrier is readily achievable." Parr v. L & L Drive–Inn Restaurant, 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000); see also Johnson v. Beahm, 2011 WL 5508893, *2 (E.D. Cal. Nov. 8, 2011).

### i. Standing

As with all causes of action, a plaintiff must have Article III standing to bring a claim under the ADA. To establish Article III standing, a plaintiff must demonstrate that he or she has suffered an injury in fact, that the injury is traceable to the defendant's challenged conduct, and that the injury can be redressed by a favorable decision. Hubbard v. Rite Aid Corp., 433 F. Supp. 2d 1150, 1162 (S.D. Cal. 2006). "Under the ADA, when a disabled person encounters an accessibility barrier violating its provisions, it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 947 (9th Cir. 2011). Rather, the barrier need only interfere with the plaintiff's "full and equal enjoyment" of the facility. 42 U.S.C. § 12182(a). The Ninth Circuit has held:

> Once a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III . . . .

Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1042 n.5 (9th Cir. 2008).  "[A] 'barrier' will only amount to such interference if it affects the plaintiff's full and equal enjoyment of the facility on account of his particular disability."  Chapman, 631 F.3d at 947.  Plaintiff alleges that he visited the Extreme Backyard Designs store in March 2020, intending to patronize the business, but encountered barriers including furniture in the ADA-designated parking lot, narrow and inaccessible paths, and counters at the wrong height that prevented his full and equal enjoyment of the facility. (Complaint ¶¶ 12-24.)  He has thus suffered an injury in fact and has standing.

### ii.     Plaintiff's Disabled Status

The ADA defines disability as "[a] physical or mental impairment that substantially limits one or more major life activities ... [,] a record of such an impairment[,] or being regarded as having such an impairment."  42 U.S.C. § 12102(1).  Major life activities as defined by the ADA include walking and standing. Id. § 12102(2).  Plaintiff alleges that he "a paraplegic who uses a wheelchair." (Complain, ¶ 1.)  Because this allegation is accepted as true, he has established a physical impairment that substantially limits the major life activities of walking and standing.  Plaintiff is therefore disabled within the meaning of the ADA and has satisfied the first element of his Title III discrimination claim.

### iii.     Place of Public Accommodation

A sales establishment is a place of public accommodation.  Id. § 12181(7)(E).  Plaintiff asserts that the Extreme Backyard Sports store is "a facility open to the public, a place of public accommodation, and a business establishment." (Complaint ¶ 13.)  Accepting these allegations as true, Plaintiff has established the second element of his ADA claim.

### iv.     Denial of Public Accommodation Due to Architectural Barriers

The next two elements of an ADA architectural barriers claim evaluate whether architectural barriers worked to discriminate against the plaintiff on account of his physical disability.  "Whether [a plaintiff is] denied public accommodations on the basis of disability—is met if there was a violation of applicable accessibility standards."  Moeller v. Taco Bell Corp., 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011); see Chapman v. Pier 1 Imps. (U.S.), Inc., 631 F.3d 939, 945 (9th Cir. 2011) (en banc).  Those standards are set forth by the ADA Accessibility Guidelines ("ADAAG"), which "provide [ ] the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations."  Chapman, 631 F.3d at 945; see 28 C.F.R. pt. 1191 (2010 Standards); 28 C.F.R. pt. 36, App. D (1991 Standards).

Under the 1991 Standards, any business that provides parking spaces must provide handicap parking spaces.  28 C.F.R. pt. 36, App. D, § 2.2.  Plaintiff alleges that the Extreme Backyard Sports store's handicap parking spaces were blocked. (FAC ¶ 14.)  He therefore alleges a violation of the 1991 Standards.

### v. Readily Achievable Removal of Public Barriers

Whether removal of a barrier is readily achievable involves consideration of four factors:

> A) the nature and cost of the action needed . . .; B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

Hubbard, 433 F. Supp. 2d at 1168 (citing 42 U.S.C. § 12181(9)).

"[T]he Ninth Circuit has yet to decide who has the burden of proving that removal of an architectural barrier is readily achievable." Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1010 (C.D. Cal. 2014). However, many district courts in the Ninth Circuit have held that a plaintiff bears the initial burden with respect to readily achievable remediation of architectural barriers. Plaintiff meets this initial burden by alleging that the architectural barriers are readily removable. (Complaint, ¶ 25.) See, e.g., Johnson v. Hall, 2012 WL 1604715, *3 (E.D. Cal. May 7, 2012) (plaintiff's allegation that architectural barriers "are readily removable" satisfied his burden). Accordingly, Defendant bears the ultimate burden of persuasion that barrier removal is not readily achievable. See Colorado Cross Disability v. Hermanson Family, Ltd., 264 F.3d 999, 1002-1003 (10th Cir. 2001). Defendants have "failed to meet his burden because [they] failed to appear and defend." Vogel, 992 F. Supp. 2d at 1011. Accordingly, Plaintiff has established the fifth and final element of his Title III discrimination claim. Plaintiff has stated a cause of action under the ADA.

### a. Unruh Civil Rights Act

The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability, [or] medical condition . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). A violation of the ADA necessarily violates the Unruh Act, Cal. Civ. Code § 51(f), and, although required if not based on an ADA violation, "no showing of intentional discrimination is required where the Unruh Act violation is premised on an ADA violation." Lentini v. Cal. Ctr. for the Arts, Escondido, 370 F.3d 837, 847 (9th Cir. 2004). Because Plaintiff's Complaint alleges a cognizable ADA claim, he has also properly alleged a violation of the Unruh Act.

### 3. Sum of Money at Stake

The fourth Eitel factor examines the amount of money at stake in the action relative to the gravity of the defendant's conduct. PepsiCo, 238 F. Supp. 2d at 1176. Plaintiff seeks a total monetary judgment of $12,965: $8000 in damages and $4,965 in attorneys' fees. (Motion at 2.) Unlike the ADA, the Unruh Act permits the recovery of monetary damages in the form of actual and treble damages or statutory damages of $4,000 per violation. See M.J. Cable, Inc., 481 F.3d at 731 (citing Cal. Civ. Code § 51(a)). Plaintiff's request for damages is therefore commensurate with his statutory rights under the Unruh Act. Thus, the Court finds this factor weighs in favor of granting the Motion.

### 4. Possibility of Dispute Concerning Material Facts

Upon entry of default, all well-pleaded factual allegations are deemed true—except those pertaining to damages. TeleVideo, 826 F.2d at 917; Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. Feb. 11, 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). Because no Defendant has appeared in this action or asserted any defenses, it is unlikely that disputes as to material facts will arise. Accordingly, this factor favors default judgment.

### 5. Excusable Neglect

Under the sixth factor, the court must consider whether a defendant's default may have been due to excusable neglect. Eitel, 782 F.2d at 1472. This factor favors default judgment where the defendant has been properly served or the plaintiff demonstrates the defendant is aware of the action. Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1082 (C.D. Cal. Jan, 23, 2012). In the instant case, as described above, Plaintiff properly served all Defendants with the summons, Complaint, and Notice of Application for Default Judgment. Accordingly, the Court concludes Defendants' default was not the product of excusable neglect. Thus, this factor favors entry of default judgment.

### 6. Policy Favoring Decision on the Merits

Generally, default judgments are disfavored because "[c]ases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472 (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)). However, where a defendant fails to appear and respond, default judgment is appropriate. Wecosign, 845 F. Supp. 2d at 1083. Here, Defendants' failure to appear or defend against this action makes a decision on the merits impracticable. Therefore, this factor weighs in favor of default judgment.

On balance, the Eitel factors weighs in favor of default judgment against Defendants. Thus, the Court GRANTS the Motion for Default Judgment.

### C. Requested Relief

Rule 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). A plaintiff must "prove up" the amount of damages. Aifang v. Velocity VIII, L.P., 2016 WL 5420641, at *7 (C.D. Cal. Sept. 26, 2016).

#### 1. Monetary Relief

Plaintiff seeks $8,000 in damages. The Unruh Act permits the recovery of monetary damages in the form of actual and treble damages or statutory damages of $4,000 per violation. See M.J. Cable, Inc., 481 F.3d at 731 (citing Cal. Civ. Code § 51(a)). Plaintiff seeks two $4,000 penalties – one against Defendant EBD and one against the Hurdley Defendants. Plaintiff alleges that these two separate parties are both fully liable because one (Defendant EBD) is the tenant of the building, and the other (Hurdley Defendants) is the landlord.

While awarding two separate awards for the same amount is unusual, it is not contrary to law. The implementing regulations of the ADA provide that landlords and tenants can be independently responsible. (28 C.F.R. § 36.201.) The Ninth Circuit has held that a plaintiff may be awarded double damages for the same incident if there have been two different parties causing the incident. Lentini v. California Ctr. for the Arts, Escondido, 370 F.3d 837, 849 (9th Cir. 2004). And our sister courts have awarded $8,000 penalties in virtually identical cases where plaintiff named both landlord and tenant as defendants. See, e.g., Langer v. Gutierrez, No. 219CV04963ABJPRX, 2019 WL 7900032, at *4 (C.D. Cal. Oct. 28, 2019) (in default judgment, awarding $4,000 against landlord and $4,000 against tenant in case brought by plaintiff in wheelchair who could not enter store). Plaintiff has established that he is entitled to the monetary relief requested.

#### 2. Injunctive Relief

Plaintiff also seeks an injunction "to remove barriers identified in the Complaint and maintain accessible features at the property." (Motion at 2.) To be entitled to injunctive relief under 42 U.S.C. § 12188(a)(2), Plaintiff must show that Defendant has violated the ADAAG. "In the case of violations [of the accessibility provisions] of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. . . ." Id.; see Moeller v. Taco Bell, 816 F.Supp.2d 831, 859 (N.D. Cal. 2011).

Where a plaintiff seeks injunctive relief, he must also demonstrate a significant possibility of future harm. See San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1126 (9th Cir.1996). "In the ADA context, in determining the likelihood that a plaintiff will return to defendant's facility, courts have examined such factors as (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." Hubbard, 433 F. Supp. 2d at 1162.

Plaintiff has submitted no evidence that the Extreme Backyard Sports store is near his residence; that he has patronized the Extreme Backyard Sports store in the past; that his purported plans to return are definite; or that he frequently travels in the area. It appears plausible from the facts that Plaintiff went to the Extreme Backyard Sports store once and may never return. Thus, the Court finds that Plaintiff has failed to demonstrate the likelihood of future harm necessary for a permanent injunction.

### 3. Attorneys' Fees and Costs

Plaintiff is entitled to a reasonable attorneys' fee under 42 U.S.C. § 12205. Plaintiff is indisputably a "prevailing party," because he has secured an "enforceable judgment[ ] on the merits." Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603–04 (2001). "A prevailing plaintiff under the ADA should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." See Jankey v. Poop Deck, 537 F.3d 1122, 1130 (9th Cir. 2008) (internal quotation marks omitted).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Once the court has calculated that amount, known as the lodestar, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" Id. at 434.

Plaintiff seeks $4,965 in legal fees and costs. (Motion 2). Plaintiff's counsel submits that M. Potter, billing at $595/hr, spent 1 hour on tasks like "Review google satellite images" and "give investigator instructions on photographs and measurements to obtain"; that R. Handy, billing at $595/hr, spent 2.6 hours on tasks like "Public records research to determine the identity of the responsible parties"; that A. Seabock, billing at $450/hr, spent 1.1 hours on tasks largely billed as case management and motions; and that F. Gutierrez, billing at $400/hr, spent 3.5 hours on preparing the declaration and default judgment motion. (Billing Records.) Plaintiff's counsel further submits that all of these individuals are attorneys, and that the billed rates are commensurate with their experience levels. (Handy Decl. ¶¶ 3-6.)

The Court accepts Plaintiff's counsel's contention that the quoted fees are commensurate with each attorney's level of experience. However, the Court finds it highly unlikely that the founding partner of the firm, billing at nearly $600/hour, completes tasks like "Review google satellite images." (Id. 3; Billing Records.) Furthermore, the Court notices that Plaintiff's counsel has identified no paralegals who have worked on the case. According to the Billing Records, all tasks in this straightforward default motion have been completed by someone who bills at least $400/hour.

This strains credulity. This Court is aware that paralegals handle similar matters at similar firms almost entirely on their own. See, e.g., Whitbread v. RGR Petroleum, Inc., No.

EDCV191933JGBSPX, 2020 WL 4003651, at *7 (C.D. Cal. May 11, 2020) (awarding attorneys' fee of $2,071 where paralegal spent 10.9 hours on ADA default case, billing at $190/hour). Furthermore, Plaintiff's counsel submits the declaration of attorney Richard Pearl as evidence of expert opinion on reasonable fees – and the majority of cases that Mr. Pearl cites as evidence of the reasonableness of Plaintiff's counsel's fees include work by a law clerk or paralegal at $125-$260 an hour.

This Court assumes that a reasonable fee award in this case would include work done by paralegals, and that billing all work, even routine case management, to attorneys is unreasonable. The Court will thus adjust the legal fees by assuming that it was reasonable for attorneys to perform all work billed as "Motions" and the initial client intake on March 12, 2020, or 4.3 hours of work. The Court awards Plaintiff's counsel the quoted attorneys' fees for this work: $178.50 for the intake work done by M. Potter, $225 for the Motions work done by A. Seabock, and $1,400 for the Motions work done by F. Gutierrez. However, the Court will award Plaintiff's counsel fees for all other work billed as "Prefiling" and "Case Management" (3.9 hours) at a paralegal rate of $200/hour, which is in the middle of the range provided by Plaintiff's counsel's own expert, for a total of $780. Thus calculated, the attorneys' fees total $2,583.50.

Plaintiff seeks $928 in costs. (Billing Records.) Plaintiff's accounting of these costs is reasonable. Therefore, the total fee and cost award is $3,511.50.

### IV.   CONCLUSION

Based on the foregoing, Plaintiff's Motion for default judgment is GRANTED. Judgment shall be entered as follows:

1. Plaintiff is AWARDED:
   a. $8,000 in monetary damages; and
   b. $3,511.50 in legal fees and costs.

2. Plaintiff is ORDERED to mail a copy of this order and the judgment concurrently filed therewith to Defendant. Plaintiff shall file a Proof of Service with the Court within ten days of the date of this Order.

**IT IS SO ORDERED.**